**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

RONALD K. HALKMON,          )
                                    )
           **Petitioner,**       )
                                    )
**vs.**                         )  **Case no. 4:13cv02579 TCM**
                                    )
IAN WALLACE,            )
                                    )
           **Respondent.**     )

## MEMORANDUM AND ORDER

This matter is before the Court on a "first supplemental motion to add new claims" ("motion") [Doc. 20] filed by Ronald K. Halkmon[1] ("Petitioner"). Ian Wallace ("Respondent") opposes the motion.

In 2009 Petitioner was convicted, after a jury trial, of one count each of first-degree murder and first-degree robbery, and two counts of armed criminal action. During trial, the State presented the testimony of several witnesses, including Petitioner's younger brother, Avedou Harkmon ("Avedou").[2]

On direct appeal, the Missouri Court of Appeals described the circumstances surrounding the shooting as follows:

> In February 2008, Avedou . . . lived in the second-floor apartment at 5241 Lotus in St. Louis with his friend Edmond Mack (["Victim"]). The building was owned by [Avedou]'s uncle, Leon Lewis (Lewis). [Avedou] and [Victim] sold drugs out of the apartment. In early February, [Carlos] Vaughn, [Petitioner]'s cousin[ and one of Petitioner's co-defendants], and his girlfriend . . . were living in the first-floor apartment. At some point, Lewis evicted Vaughn and [his

---

[1] Throughout the state court proceedings, Petitioner's last name was spelled either "Halkmon" or "Halkman." The Court is spelling it the way Petitioner spelled it in his federal habeas petition.

[2] Because this witness and Petitioner have the same last name, the Court will refer to this witness by his first name.

girlfriend], and allowed [Petitioner] and his girlfriend . . . to live in the downstairs apartment . . . . A few weeks later, Lewis evicted [Petitioner] and his girlfriend . . . .

On February 25, 2008, [Petitioner] and [his girlfriend] were in the process of moving out of the apartment while Vaughn and [his girlfriend] were moving back in. [Kerry] Green, a friend of Vaughn's [and the other of Petitioner's two co-defendants], was at the apartment to help Vaughn move in.

During the move, [Avedou] and [Victim] were upstairs watching television. At some point, [Petitioner] knocked on the door to their apartment and asked to use [Avedou]'s cell phone to call Lewis. During the call, [Petitioner] became upset and argued with Lewis about the refund of [Petitioner]'s deposit on the apartment. Later that day, [Petitioner] knocked on the door to the upstairs apartment again and asked [Avedou] for a cigarette. [Avedou] gave [Petitioner] a cigarette and [Petitioner] left the apartment.

[Petitioner] knocked on the [apartment] door again and, this time, [Victim] answered the door. After [Victim] answered the door, [Avedou] heard [Victim] come back up the stairs. [Petitioner] called [Victim] back downstairs, saying, "Let me holler at you for a moment." As [Victim] went back down the stairs, [Avedou] got up from his seat and went to the top of the stairs to see what was going on. [Avedou] saw [Petitioner], Green, and Vaughn on the front porch as [Victim] approached the door. [Avedou] heard [Petitioner] say to [Victim], "What's going on with you and [my girlfriend]?" [Victim] responded, "Ain't nothing going on with me and [her], go get [her]," and stepped out onto the porch. [Avedou] returned to his chair inside the apartment. [Avedou] then heard [Victim] say, "You tripping, Ron," and then a single gunshot.

[Avedou] ran to the top of the stairs where he saw [Victim] backing up the stairs while [Petitioner] held [Victim]'s collar with one hand and a gun in the other. [Victim] was trying to hold himself up while [Petitioner] was pulling him down the stairs. [Petitioner] pulled [Victim] onto the porch, then Green and Vaughn reached into [Victim]'s pants pockets. [Avedou] did not see if Green and Vaughn took anything from [Victim]'s pockets but stated that [Victim] usually carried approximately $50 on his person.

[Avedou] ran into the living room and called 911. [Avedou] told the 911 operator that he did not know who shot [Victim]. [Avedou] ran down to the porch in time to see [Petitioner], Green, and Vaughn run off the porch and into Green's vehicle. [Vaughn's girlfriend] was on the porch and began giving [Victim] CPR. [Victim] was bleeding badly, and told [Avedou], "Your brother

was tripping." [Avedou] testified that he called his sister Marnesa [Lewis][3] and told her that [Petitioner] had just shot [Victim]. [Victim] died from a single gunshot to his back that entered his chest.

When the police arrived, [Victim]'s right pants pocket was pulled inside out and no money was found on [Victim]'s body. At the scene, [Avedou] gave the police a false name but an accurate birthday, social security number, and contact information. [Avedou] initially told police that he did not know anything about the shooting, and did not tell them that [Petitioner] was the shooter. When Marnesa arrived at the scene, [Avedou] again told her that it was [Petitioner] who had shot [Victim]. [Avedou] testified that after he left the scene he received threatening phone calls from [Petitioner]. Later that night, the police contacted [Avedou], and [Avedou] told the detective that [Petitioner] had shot [Victim].

[Petitioner] testified in his own defense. [Petitioner] stated that he, [Avedou], and [Victim] had all been selling drugs from the apartment building. [Petitioner] stated that he had a special arrangement with [Victim], wherein [Petitioner] would supply the drugs and [Victim] would receive one-third of the proceeds of the sales he made. [Petitioner] stated that [Avedou] was upset and jealous because of this arrangement. [Petitioner] acknowledged that he talked to Lewis that day but denied being upset or angry. [Petitioner] claimed that [Avedou] was the one who was being evicted by Lewis and was angry.

[Petitioner] testified that later that evening, he was on the porch having a conversation with Green when two or three customers approached the residence to buy drugs. [Petitioner] stated that he yelled for [Victim] to come downstairs and handle the sale. [Victim] came downstairs and made the transaction, grossing $40. [Petitioner] said that [Avedou] came to the top of the stairs whining, and that [Avedou] and [Victim] got into an argument about the customers. [Petitioner] testified that he heard a gunshot, pushed the door open, and saw [Victim] in the stairwell crumpled over while [Avedou] stood at the top of the stairs. [Petitioner] said he tried to pull [Victim] onto the porch, and then left the scene because he was carrying narcotics. After he was arrested, [Petitioner] initially denied being at the apartment at the time of the shooting but subsequently asserted that Green was the shooter. At trial, [Petitioner] testified that neither statement was true. [Petitioner] denied that Green or Vaughn went through [Victim]'s pockets after he was shot. [Petitioner] testified that he did not leave the scene with Green because Green was already gone, and that Vaughn

---

[3] Because her last name is the same as several other persons mentioned, the Court will refer to her by her first name.

was inside his apartment when [Victim] was shot.

Green testified that he was at the apartment that day to help Vaughn and [his girlfriend] move into the downstairs apartment but he left before the shooting occurred.

Vaughn did not testify at trial but presented [his girlfriend] as an alibi witness. [She] testified that she and Vaughn were in the back area of the first-floor apartment fixing a leak when they heard a commotion on the front porch. When she opened the front door, [Victim] had already been shot and was lying on the porch. [She] testified that no one else was outside when she opened the front door and she did not see anyone going through [Victim]'s pockets. Vaughn left the apartment while [she] attempted CPR on [Victim].

Mem. Supplementing Unpublished Per Curiam Order Affirming J. Pursuant to Rule 30.25(b), dated Sept. 28, 2010, Resp't Ex. E, at 3-6 (footnote added). The trial court sentenced Petitioner to concurrent terms of imprisonment of life without parole on the first-degree murder offense and thirty-years on each of the other three offenses. Before filing this federal habeas proceeding, Petitioner filed several state court proceedings challenging the conviction.

In his direct appeal, Petitioner presented two challenges to the sufficiency of the evidence and two challenges to allegedly erroneous trial court rulings, one focusing on the denial of his request for severance of trial from his two co-defendants and the other focusing on the admission of hearsay evidence. Pet'r Br., Resp't Ex. C. The Missouri Court of Appeals affirmed his conviction. Unpublished Per Curiam Order, accompanied by a Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Sept. 28, 2010, Resp't Ex. E.

Petitioner then filed a pro se post-conviction motion, presenting six claims for relief. Pet'r Pro Se Post-Conviction Mot., Legal File, Resp't Ex. F, at 4-25. In particular, Petitioner

contended he was entitled to relief based on prosecutorial misconduct, the ineffective assistance of counsel provided by his trial attorney,[4] the insufficiency of the evidence, the prosecutor's refusal to sever his trial from that of his co-defendants, because there existed a conspiracy to convict Petitioner, and due to the admission of certain testimony of Marnesa and Cyntoria Lewis ("the Lewises").

In an amended post-conviction motion filed by Petitioner's appointed attorney, Petitioner sought relief based on three claims and requested an evidentiary hearing.  Pet'r Am. Post-Conviction Mot., Legal File, Resp't Ex. F, at 29-41.  Specifically, Petitioner contended he was entitled to relief due to the ineffective assistance of his trial attorney, the ineffective assistance of his attorney on direct appeal, and prosecutorial misconduct.  In relevant part, his ineffective assistance of trial counsel claim was based on the attorney's failure to investigate and present evidence rebutting Avedou's testimony.  Id. at 34-35.  Petitioner urged that

> At some point prior to trial, or during trial, [Petitioner]'s trial counsel was contacted in writing by Demetrius Ingram [(Ingram)]. . . . Ingram wrote [Petitioner]'s trial counsel that Avedou . . . admitted to [Ingram] that [Avedou] fabricated information he gave to the police related to the criminal case at issue. Despite this, . . . Ingram was not contacted by [Petitioner]'s counsel nor called at trial.  In that Avedou['s] testimony and credibility were vital factors in the case, defense counsel's failure to follow up and investigate this possible rebuttal information/witness was professionally unreasonable.  Further, [Petitioner] was prejudiced by trial counsel's inaction because if . . . Ingram was called in rebuttal, the State's key witness linking [Petitioner] to the charge, would have been discredited.

**Id.**  For his claim that his attorney on direct appeal provided ineffective assistance of counsel,

---

[4] Petitioner also generally urged that his attorney on direct appeal provided ineffective assistance of counsel but did not specify the basis for that claim.

Petitioner contended that the attorney failed to raise on appeal the insufficiency of the evidence to support any degree of murder, and instead raised only the insufficiency of the evidence to support a finding of the "cool reflection" needed to establish first-degree murder.  **Id.** at 35-36.

The post-conviction motion court denied Petitioner's post-conviction motion without holding a hearing.  Concls. of Law and Order, dated May 17, 2012, Legal File, Resp't Ex. F, at 42-49.

In his post-conviction appeal, Petitioner presented three points, two challenging the assistance of his trial attorney and one challenging a statement the prosecutor made during the State's opening argument.  Pet'r Br., Resp't Ex. G.  In relevant part, Petitioner argued for his second point that his trial attorney was ineffective  in failing to investigate and to present the rebuttal testimony of Ingram that Avedou told Ingram that he lied to the police regarding Petitioner's involvement in the crimes.  **Id.** at 15, 33.

The state appellate court affirmed the motion court's judgment.  Unpublished Per Curiam Order, supplemented with a memorandum sent to the parties only, dated Sept. 17, 2013, Resp't Ex. I.  With respect to point two, that court stated:

> In his second point, [Petitioner] claims the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing because trial counsel was ineffective in failing to investigate and to present the rebuttal testimony of . . . Ingram that Avedou told Ingram that he lied to the police regarding [Petitioner]'s involvement in the crimes.  [Petitioner] claims defense counsel received a letter from Ingram declaring that Avedou had admitted to Ingram he fabricated information he gave to the police about the shooting. [Petitioner] maintains counsel unreasonably failed to contact Ingram and this failure constituted ineffective assistance because Avedou's testimony and credibility were vital factors in the case leading to [Petitioner]'s conviction, and if Ingram had been called to rebut Avedou's testimony, the State's key witness linking [Petitioner] to the shooting would have been discredited.

[Petitioner] fails to allege what information was allegedly fabricated by Avedou or how it would have rebutted Avedou's testimony implicating [Petitioner] in [Victim]'s murder. To obtain a hearing based on counsel's failure to investigate, a movant must specifically identify who the witness is, what his testimony would be, whether or not counsel was informed of his existence, and whether or not he was available to testify. <u>Morrow v. State</u>, 21 S.W.3d 819, 823 (Mo. banc 2000). [Petitioner] did not allege what Ingram would have testified to if he had been called to do so. Therefore it is impossible to say with any certainty Ingram's testimony would have rebutted Avedou's testimony and discredited him as a witness, leading to [Petitioner]'s acquittal. <u>Id.</u> at 823-24; <u>Leisure v. State</u>, 828 S.W.2d 872, 878 (Mo. banc 1992).

Based on the foregoing, we find [Petitioner] did not allege facts demonstrating ineffective assistance of counsel based on failure to investigate, and thus the motion court did not err in denying this claim without an evidentiary hearing. Point II is denied.

Unpublished Per Curiam Order, supplemented with a memorandum sent to the parties only, dated Sept. 17, 2013, Resp't Ex. I, at 8-9.

After the state court proceedings concluded, Petitioner filed his federal habeas petition setting forth seven grounds for relief. In ground one, Petitioner asserts that his trial attorney provided ineffective assistance by failing to investigate witnesses Icey Lewis (who is Petitioner's mother) and Ingram, by disclosing to the State "attorney client work product," by constructively waiving Petitioner's right to remain silent, by failing to object to the prosecutor's misconduct, by failing to object to evidence of uncharged misconduct, and by failing to subpoena Shante Jennings. Petitioner also states that "trial counsel's obvious reluctance to make an ope[]ning, proves he had 'no strategy.'"

For his second ground, Petitioner seeks relief based on prosecutorial misconduct. Specifically, Petitioner urges the State knowingly withheld Jennings' absence until the fifth day of trial; the prosecutor misled the trial court with "statements of uncharged conduct through the

testimony of witness[es] who w[]ere suppose[d] to be reh[a]bilita[]ting a prior consistent statement"; and the prosecutor failed to advise the defense and the trial court that Jennings had two active warrants at the time of Petitioner's trial.

The denial of severance is the basis of Petitioner's third ground for federal habeas relief. Petitioner contends the lack of severance was improper because, through opening and closing statements, as well as cross-examination of Petitioner, his co-defendants' defense was that Petitioner did the shooting and the other two defendants had no involvement, and a "message [was conveyed] to [the] jurors that [two] or more parties were guilty."

In ground four, Petitioner contends the admission of hearsay evidence, through the Lewises' testimony, allowed admission of evidence of uncharged conduct, bolstered the State's case, and allowed the portrayal of these two witnesses, who are Petitioner's sisters, as victims.

For ground five, Petitioner asserts he is entitled to relief due to "newly discovered evidence," specifically a letter from Ingram to Petitioner's trial attorney which was discovered when preparing for Petitioner's post-conviction appeal and had not been revealed at any time earlier. The letter reportedly states that Ingram had information about two witnesses, Avedou and Marnesa, and the first-degree murder charge against Petitioner. Petitioner further argues that Ingram's affidavit, created after discovery of the letter, states that "both the state[']s witness[es] spoke of a set-up in [Ingram's] presence, [and] Petitioner[']s mother was made aware of this plot by . . . Ingram." Petitioner reports that his mother, Icey Lewis, "spoke of this set up in personal letters sent to [him], that [Petitioner then] gave to trial counsel."

Petitioner's sixth ground for relief is based on the allegedly ineffective assistance of the

attorneys who represented him during his post-conviction motion proceeding and in his post-conviction appeal. Specifically, Petitioner contends that, under **Martinez v. Ryan**, 132 S. Ct. 1309, 1315 (2012), his post-conviction motion counsel failed properly to raise the ineffectiveness of his attorney on direct appeal on the ground that the appellate attorney raised a prosecutorial misconduct claim as a sufficiency of the evidence claim rather than as a stand-alone claim subject to plain error review. Additionally, Petitioner urges that his post-conviction motion attorney failed to investigate Ingram and, after Petitioner received Ingram's affidavit, failed to present it to the court reportedly because "it was too late to use." Petitioner argues that Ingram's letter had not been available earlier because Petitioner's trial attorney never made the existence of Ingram known to Petitioner and the "evidence" from Ingram was "received" after Petitioner's post-conviction motion was filed and appealed.

Petitioner's seventh ground for federal habeas relief contends there is insufficient evidence to support the first-degree murder conviction in that evidence refuted any "bad blood" or "ill will" between Victim and the shooter, and to support the first-degree robbery conviction in that there no showing whether or not Victim had "U.S. currency" on him at the time of the shooting.

By his motion, which he pursues under Federal Rules of Civil Procedure 15(c) and 15(d), Petitioner seeks to add four claims to his pending habeas petition. In his first proposed claim, designated as "ground nine,"[5] Petitioner alleges that his direct appeal attorney provided

---

[5] There is no "ground eight" in either Petitioner's original habeas petition or Petitioner's motion.

ineffective assistance of counsel by failing to raise a <u>Brady</u> violation based on the prosecutor's alleged failure to provide Petitioner with information that Avedou was acting as a confidential informant. Petitioner urges such information is both "critical impeachment information," due to Avedou's allegedly false testimony that he had not worked with law enforcement officials before, and evidence material to Petitioner's guilt or innocence.

For Petitioner's second proposed claim, which is designated as "ground ten," he contends that his attorney on direct appeal was ineffective for failing to raise on appeal that the prosecution knowingly used false testimony of Avedou, who "falsely testified that . . . he never worked with law enforcement officials before, [and] the prosecutor did nothing to correct this false testimony."

In Petitioner's third proposed claim, designated as "ground eleven," Petitioner argues, pursuant to **<u>Martinez</u>**, <u>supra</u>, that his post-conviction motion attorney provided ineffective assistance by failing to include in the amended post-conviction motion a claim that Petitioner's trial attorney provided ineffective assistance by "failing to investigate, uncover, and present at trial and in a motion for new trial" information regarding the State's <u>Brady</u> violation allegedly occurring when the prosecutor failed to disclose that Avedou was a confidential informant.

For his fourth and final proposed claim, which is designated as "ground twelve," Petitioner urges, pursuant to **<u>Martinez</u>**, <u>supra</u>, that his post-conviction motion attorney provided ineffective assistance by failing to include in the amended PCR motion a claim that Petitioner's trial attorney provided ineffective assistance in failing to object to and preserve for appellate review the State's alleged "knowing use of false testimony" by Avedou. In particular Petitioner

points to Avedou's testimony that he never worked with law enforcement officials before, which "false testimony" was not corrected by the prosecutor.

The Rule "governing pleading amendments, Federal Rule of Civil Procedure 15, [which is] made applicable to habeas proceedings by [28 U.S.C. ] § 2242, Federal Rule of Civil Procedure 81(a)([4]), and Habeas Corpus Rule [12], allows pleading amendments with ['the court's leave' at] any time during a proceeding. <u>See</u> Fed. Rule Civ. Proc. 15(a)." **Mayle v. Felix**, 545 U.S. 644, 655 (2005) (addressing whether an amended habeas petition related back to the original petition under prior Rule 15(c)(2), the predecessor to what is now Rule 15(c)(1)(B)). The decision whether or not to allow the amendment of a pleading is within this Court's discretion, **Moore-El v. Luebbers**, 446 F.3d 890, 901 (8th Cir. 2006), keeping in mind the directive of Rule 15(a) that a court "should freely give leave [to amend] when justice so requires."

> The court may disallow amendment [of a pleading] for various reasons, . . . including 'undue delay, bad faith or dilatory motive on the part of the [petitioner], repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.' <u>Foman v. Davis</u>, 371 U.S. 178, 182 . . . (1962).

**Moore-El**, 446 F.3d at 901-02 (third alteration in the original).

Importantly, claims in an amended habeas petition filed after the expiration of the one-year limitations period for the filing of a federal habeas petition under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") may not be considered if they do not "relate back" to the date of the original habeas petition. **Mayle**, 545 U.S. at 655 (discussing an amended petition under prior Federal Rule of Civil Procedure 15(c)(2), the predecessor of what

is now Rule 15(c)(1)(B)); accord **McKay v. Purkett**, 255 F.3d 660 (8th Cir. 2001) (per curiam) (same, and finding no abuse of discretion in the district court's dismissal of an amended habeas petition as untimely when the claims in that petition did not relate back to the claims in the original, timely-filed habeas petition). In relevant part, claims relate back to the original claims when the amended claims arise out of the "conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). To relate back in federal habeas proceedings, the original and amended claims must be "tied to a common core of operative facts"; it is not enough that the new claims "relate to the same trial, conviction, or sentence" as the original claims. **Mayle**, 545 U.S. at 664, 662. More specifically, "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." **Id.** at 650.

Whether a motion to amend a federal habeas petition is timely under the AEDPA, or untimely and contains claims that relate back to Petitioner's original claims, the Court may deny leave to file if the amendment would be futile. **Moore-El**, 446 F.3d at 902. Here, Petitioner's proposed amended claims are futile.

With respect to Petitioner's proposed claims that his attorney on direct appeal provided ineffective assistance of counsel based on a failure to pursue on direct appeal either a Brady violation claim (proposed "ground nine") or a claim the prosecutor knowingly used Avedou's allegedly false testimony (proposed "ground ten"), these claims are procedurally barred from consideration on their merits in this federal habeas proceeding due to Petitioner's failure to

present the claims in his post-conviction proceeding. See **Moore-El**, 446 F.3d at 901-03 (affirming the denial of the petitioner's motion to amend his habeas petition on the ground the amended petition included a defaulted claim).

A state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a claim procedurally defaulted due to a petitioner's failure to follow applicable state procedural rules in raising the claim in state court. **Sawyer v. Whitley**, 505 U.S. 333, 338 (1992). Missouri state law requires the raising of constitutional claims at the first available opportunity in the state court proceedings. See **In re T. E.**, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001). The earliest point and exclusive procedure for raising a claim that an attorney on direct appeal provided ineffective assistance of counsel is in a post-conviction motion; a motion court's decision on such motions are subject to appeal; and successive post-conviction motions are not permitted. Mo. S. Ct. Rule 29.15(a), 29.15(k), and 29.15(l); **Moore-El**, 446 F.3d at 896. Claims that should have been but were not presented in a post-conviction motion or on appeal from a denial of a post-conviction motion are procedurally defaulted and may not be considered in a federal habeas proceeding. See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (finding that claims not presented in an amended Rule 29.15 post-conviction motion or appeal from the denial of that motion are procedurally defaulted).

Here, then, Petitioner had to present his proposed "ground nine" and proposed "ground ten" no later than Petitioner's post-conviction motion proceeding. The record demonstrates that

the two claims that Petitioner's attorney on direct appeal provided ineffective assistance of counsel, which are Petitioner's proposed "ground nine" and proposed "ground ten," were not presented in Petitioner's pro se post-conviction motion, Petitioner's amended post-conviction motion, or Petitioner's post-conviction appeal. Therefore, those claims are procedurally defaulted.

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).

Petitioner has not set forth any reason for his failure to pursue these two proposed grounds in his post-conviction proceeding and, therefore, has not shown any cause to avoid the default. To the extent the Court should consider **Martinez**, supra, as supporting a finding of cause, that case is inapplicable because the United States Court of Appeals for the Eighth Circuit has concluded that case does not support a finding of cause unless the underlying federal habeas claim is a claim that a trial attorney, as opposed to an attorney on direct appeal,

provided ineffective assistance of counsel. **Dansby v. Hobbs**, 766 F.3d at 809, 833 (8th Cir. 2014). Because no cause has been established for Petitioner's procedural default, it is unnecessary to consider whether he has demonstrated prejudice, **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc). Cause and prejudice does not support consideration of the merits of these two defaulted claims.

The merits of these two proposed ineffective assistance of direct appeal counsel claims may be reached, absent a showing of cause and prejudice, if Petitioner establishes that a failure to consider their merits will result in a fundamental miscarriage of justice. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). A showing of actual innocence requires new reliable evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). More specifically, Petitioner must present new reliable evidence that he was innocent of the crime of which he was convicted." **Storey v. Roper**, 603 F.3d 507, 524 (8th Cir. 2010) (citing House v. Bell, 547 U.S. 518, 537 (2006)). "The evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence. **Amrine v. Bowersox**, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc); accord **Kidd v. Norman**, 651 F.3d 947, 951-54 (8th Cir. 2011). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'"

**Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting <u>Schlup</u>, 513 U.S. at 316).

Petitioner has not presented any new evidence of his actual innocence to support consideration of the merits of these two proposed claims. Nor does the Court consider Ingram's information as new evidence of Petitioner's actual innocence. Ingram's letter was reportedly sent to Petitioner's trial attorney prior to or during trial. <u>See</u> Pet'r Am. Post-Conviction Mot., Legal File, Resp'ts Ex. F, at 34. Therefore, it is not clear that the letter, which reportedly resulted in a subsequent affidavit, constitutes "new" evidence even though Petitioner may not have known about the letter prior to trial. It is not clear why Petitioner or his trial attorney could not have discovered Ingram's information through the exercise of due diligence prior to or during trial. Nor is it clear that Ingram's information in either the letter or affidavit, which are not available in the record, constitutes "reliable" new evidence or establishes Petitioner's "actual innocence" with respect to the charged offenses. Having concluded that Ingram's reported information is not new or reliable evidence, the Court does not need to conduct further analysis under **Schlup**. **Nooner v. Hobbs**, 689 F.3d 921, 937 (8th Cir. 2012). Without more, Ingram's reported letter and affidavit do not support a determination that actual innocence permits consideration of the merits of Petitioner's proposed new claims designated as grounds nine and ten.

For the foregoing reasons, the two ineffective assistance of direct appeal counsel claims proposed by Petitioner are procedurally barred and may not be considered on their merits. Because the merits of those two proposed claims may not be addressed in this federal habeas proceeding, pursuit of those claims is futile and the Court will deny Petitioner's motion as to

grounds nine and ten.

With respect to Petitioner's proposed "ground eleven" and proposed "ground twelve," which are based on **Martinez**, the Court concludes those grounds are also futile. In those claims, Petitioner argues that his post-conviction counsel was ineffective in failing to raise in Petitioner's post-conviction motion claims that his trial attorney was ineffective (a) for failing to investigate, uncover, and present at trial and in a motion for new trial the prosecutor's failure to provide favorable evidence, in particular, information that would correct Avedou's allegedly false testimony that he had not worked for law enforcement before ("ground eleven"), and (b) for failing to object to and preserve for appellate review the prosecutor's knowing use of that allegedly false testimony (ground twelve). Petitioner is not entitled to federal habeas relief due to the ineffective assistance of post-conviction counsel. 28 U.S.C. § 2254(i) ("[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"). **Martinez** did not change that principle and "create a freestanding [federal habeas] claim for challenging a conviction or sentence based on the alleged ineffective assistance of state post-conviction counsel." **Lambrix v. Secretary, Fla. Dep't of Corr.**, 756 F.3d 1246, 1262-63 (11th Cir.), cert. denied, 135 S. Ct. 64 (2014) and pet. for cert. filed, Nos. 14-8193 and 14A-470 (filed Jan. 16, 2015). Rather, the opinion in **Martinez** provides a basis, through the allegedly ineffective assistance of post-conviction counsel, for establishing cause to avoid a procedural default of an ineffective assistance of trial attorney claim. **Martinez**, 132 S. Ct. at 1320. Because Petitioner would not be entitled to federal habeas relief on his proposed "ground

eleven" and "ground twelve," those claims are futile.

Having concluded that all four of Petitioner's proposed claims are futile, the Court will deny Petitioner's motion to the extent it seeks to amend his pending federal habeas petition to include those claims.

The Court will also deny the motion to the extent Petitioner seeks leave under Fed. R. Civ. P. 15(d) to supplement his petition with the four proposed claims. That Rule allows the supplementation of a pleading through the addition of claims based on circumstances "that happened <u>after</u> the date of the pleading to be supplemented" (emphasis added). To the contrary, Petitioner's four proposed claims arise out of circumstances that occurred <u>before</u> he filed the federal habeas petition he seeks to supplement. Therefore, Rule 15(d) does not support the granting of his motion.

Under the circumstances, the Court will deny Petitioner's motion.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Petitioner's motion [Doc. 20] is **DENIED**.

Petitioner's original federal habeas petition remains pending.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this <u>13th</u> day of <u>March</u>, 2015.