**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD K. HALKMON, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:13CV2579 NCC |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent, | ) | |

## MEMORANDUM AND ORDER

Ronald K. Halkmon, Jr., petitions the Court for a writ of habeas corpus under 28 U.S.C.

§ 2254.[1]  After reviewing the case file, the Court finds that Petitioner is not entitled to relief, and

the petition is denied.

### Background

The Missouri Court of Appeals recited the facts of this case as follows:

On February 25, 2008, Edmond Mack (Victim) was a roommate of [Petitioner]'s
brother, Avedou Halkmon (Avedou), living together in the upstairs apartment of a
two-family flat on Lotus. Although [Petitioner] had recently moved into the
downstairs apartment, he was being evicted and was moving out while Carlos
Vaughn (Vaughn) and his girlfriend LaTonya Holmes (Holmes) were moving in.
Vaughn's friend Kerry Green (Green), who drove a burgundy-and-tan pickup
truck that he parked nearby, was also present during the move.

During the move, in the downstairs apartment, [Petitioner] and Victim were
having an argument about [Petitioner]'s girlfriend, when Avedou heard Victim
tell [Petitioner] he was "tripping" and then a shot was fired. Avedou came out of
the upstairs apartment to see what was happening. He saw Vaughn and Green
standing at the door to the apartment building behind [Petitioner], who was
holding Victim by his shirt collar with one hand and holding a .38 revolver in his
other hand. Avedou said seven or eight times to [Petitioner], "I know you ain't

---

[1] The parties consented to the jurisdiction of the undersigned magistrate judge to resolve this
proceeding.  28 U.S.C. § 636(c).

just shoot L,"[2] and [Petitioner] never looked at or responded to him. [Petitioner] pulled Victim down the last few steps of the stairwell and out the door of the building. Avedou saw Vaughn and Green go though [sic] Victim's pants pockets, then went back inside his apartment to call 911. As he was calling, he looked through the window of his upstairs apartment and saw [Petitioner], Vaughn and Green run to the burgundy-and-tan pickup truck, get inside, and speed away.

Holmes attempted to perform resuscitation on Victim while Avedou called 911. Avedou then returned to Victim to assist Holmes and Victim told him, "Your brother was tripping, [Avedou]." Before the police arrived Avedou called his sister Marnesa Lewis (Lewis) and told her that their brother, [Petitioner], had shot Victim. Victim died before the ambulance arrived.

Lewis arrived shortly before the police. When police arrived, Avedou told police that all he knew was that someone had been shot and he did not knew who did it.

Avedou, however, told Lewis again that [Petitioner] had shot Victim. Lewis took Avedou back to Lewis's own home. While Avedou was at Lewis's home, [Petitioner] called Avedou's cell phone. Avedou put the call on speakerphone, and [Petitioner] said, "You going around telling people I whacked L, it's like that for you." Avedou asked, "What?" [Petitioner] said, "It's like that, I know you ain't telling people I whacked L." Avedou felt threatened by the conversation, so he spent the night in a hotel.

Lewis and Avedou finally went to the police station. Avedou gave the officers a statement detailing everything he had seen [Petitioner], Vaughn and Green do to Victim. On February 29, 2008, police took [Petitioner] into custody.

The State charged [Petitioner] with one count of first-degree murder, one count of first-degree robbery, and two counts of armed criminal action (ACA). On September 28, 2009, [Petitioner] was tried jointly with Vaughn and Green.

[Petitioner] testified in his own defense at trial. [Petitioner] stated that he, Victim, and Avedou had been selling drugs from the apartment building, and Avedou was upset and jealous of the arrangement [Petitioner] had with Victim regarding sharing the profits. [Petitioner] stated on the day of the murder Avedou was the one being evicted and was angry about it. [Petitioner] testified Avedou shot Victim during an argument over drug customers. [Petitioner] testified he was outside when he heard a gunshot, pushed the apartment door open, and saw Victim on the stairwell, crumpled over, and Avedou at the top of the steps. [Petitioner] said he tried to assist Victim out onto the porch but then left to go to his mother's and Cyntoria's house because he had drugs on his person and thought police were on their way.

---

[2] "L" was Edmond Mack's nickname. Resp't Ex. A at 749 (Trial Tr.; Tr. pagination used throughout).

> After trial, the jury found [Petitioner] guilty as charged and the trial court entered judgment thereon, sentencing him as a prior offender to life imprisonment without parole for the murder, and concurrent thirty-year terms on the robbery and ACA counts.

Resp't Ex. I at 2-4 (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b)).

Petitioner raised four points on direct appeal: (1) that the trial court erred in denying his judgment for acquittal on the first-degree murder charge because the evidence was insufficient to support a finding of guilt; (2) that the trial court erred in denying his judgment for acquittal on the first-degree robbery charge because the evidence was insufficient to support a finding of guilt, particularly the element of the existence of any taken property; (3) that the trial court erred in denying his motion to sever his trial from that of his co-defendants; and (4) that the trial court erred in overruling his objection and allowing the jury to hear hearsay evidence offered by Marnesa and Cyntoria Lewis regarding statements made to each by Avedou in that the testimony served to bolster Avedou's testimony and was not properly offered to rehabilitate a witness whose credibility was in question. Resp't Ex. E at 6-7 (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b)). The Missouri Court of Appeals found the arguments to be meritless and affirmed the judgment. *Id.* at 7-13.

Movant filed a timely postconviction motion under Missouri Rule 29.15. Resp't F at 4-25 (Rule 29.15 Legal File). Appointed counsel filed an amended motion, which superseded the pro se motion. *Id.* at 29-41; s*ee Norville v. State*, 83 S.W.3d 112, 114 (Mo. Ct. App. 2002). The motion court denied relief without holding an evidentiary hearing. Resp't Ex. F at 42-49.

On appeal, Petitioner argued that (1) trial counsel was ineffective in constructively and effectively waiving his right to remain silent by telling the jury during voir dire that he would testify and had prior convictions; (2) trial counsel was ineffective for failing to investigate and present the rebuttal testimony of Demetrius Ingram that Avedou told Ingram that he talked to the

police regarding Petitioner's involvement in the crimes; and (3) the prosecutor committed misconduct by telling the jury in opening statement that they would hear Shante Jennings's testimony about what she witnessed at the crime scene, when the prosecutor knew he had lost contact with her, and therefore intentionally misrepresented the State's ability to produce Jennings as a witness. Resp't Ex. I at 6-10. The appellate court denied points one and two on the merits, and it found that point three was not cognizable in Rule 29.15 proceedings. *Id.* at 6-11.

Petitioner filed the instant petition on about December 5, 2013. On April 16, 2014, Petitioner moved for leave to add four new claims to the petition. The Court denied the motion on March 13, 2015, because the proposed amendments were futile.

### Grounds for Relief

In his petition, Petitioner raises the following grounds for relief:

(1) Trial counsel was ineffective for:

> 1) failing to investigate witnesses Marnesa Lewis and Demetrius Ingram;
> 2) disclosing privileged work product to the State;
> 3) constructively waiving his right to remain silent;
> 4) failing to object to prosecutorial misconduct;
> 5) failing to object to uncharged conduct;
> 6) failing to properly subpoena Shante Jennings.

(2) The prosecutor committed misconduct by failing to produce Shante Williams at trial and by introducing statements of uncharged conduct through a witness.

(3) The trial court erred in not severing his case from his co-defendants.

(4) The trial court erred in allowing hearsay evidence.

(5) "Newly discovered evidence," which was contained in his trial legal file, demonstrates his actual innocence.

(6) Postconviction counsel was ineffective for failing to argue that appellate counsel was ineffective for failing to raise his prosecutorial misconduct claim on direct appeal.

(7) The evidence was insufficient to support the conviction for first-degree murder because the elements of deliberation or premeditation were not proved, and there was insufficient evidence to support the conviction for first-degree robbery because it was never proved that he took any property from the victim.

## Procedural Default

To avoid defaulting on a claim, a Petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a Petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Id.* at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id.* at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the Petitioner can demonstrate cause and prejudice for the default. *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

## Merits Standard

In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

## Discussion

I.    *Ground 1*

In ground one, Petitioner raises several claims of ineffective assistance of counsel. Federal habeas review of an ineffective assistance of counsel claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111 (2009). First, a petitioner must overcome the high bar of *Strickland v. Washington*, 466 U.S. 668 (1984), by showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." *Id.* at 688, 694. Second, under 28 U.S.C. § 2254, the petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Both the *Strickland* standard and the standard set forth in § 2254 are highly deferential.

Ultimately, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788.

### a.    Ground 1-1

In ground 1-1, Petitioner argues that trial counsel was ineffective for failing to investigate witnesses Marnesa Lewis and Demetrius Ingram.  Petitioner asserts that trial counsel received a letter from Ingram in which Ingram stated he had information about the State's witnesses Avedou Halkmon and Marnesa Lewis.  Pet. at 16.  He alleges that Ingram "could have rebutted [Avedou's testimony] in terms of his story, credibility, and motives for fabricating his story."  *Id.* Petitioner did not state in his petition what factual testimony Ingram would have given that might have discredited Avedou's and Marnesa's testimony at trial.  In his reply brief, he alleges, for the first time, that "Ingram spoke with [Avedou] within hours of the incident and was told that he basically fabricated the story to avoid having to give [Petitioner] $40,000 that he had stolen from [Petitioner] the night of the incident . . ."  Reply Br. at 8.

Respondent contends that the claim that counsel was ineffective for failing to investigate Marnesa Lewis is procedurally defaulted, because Petitioner did not raise it in his Rule 29.15 motion.  The Court agrees.  Petitioner did not properly raise this claim, and he has not shown cause and prejudice for the default.  As a result, this claim is barred with regard to Marnesa Lewis.

Respondent argues that the Missouri Court of Appeals was correct to deny Petitioner's claim that counsel failed to properly investigate Ingram because Petitioner did not articulate what Ingram's testimony would have been or how it would have helped him.

In his amended Rule 29.15 motion, Petitioner alleged:

At some point prior to trial, or during trial [Petitioner]'s trial counsel was contacted in writing by Demetrius Ingram.  Mr. Ingram wrote [Petitioner]'s trial

counsel that Avedou Halkmon admitted to him that he fabricated information he gave to the police related to the criminal case at issue. Despite this, Mr. Ingram was not contacted by [Petitioner]'s counsel nor called at trial. In that Avedou Halkmon's testimony and credibility were vital factors in the case, defense counsel's failure to follow up and investigate this possible rebuttal information/witness was professionally unreasonable. Further, [Petitioner] was prejudiced by trial counsel's inaction because if Mr. Ingram was called in rebuttal, the State's key witness linking [Petitioner] to the charge, would have been discredited.

Resp't Ex. F at 34-35 (Am. Rule 29.15 Mot.).

In denying relief on this claim, the Missouri Court of Appeals stated:

[Petitioner] fails to allege what information was allegedly fabricated by Avedou or how it would have rebutted Avedou's testimony implicating [Petitioner] in Victim's murder. To obtain a hearing based on counsel's failure to investigate, a movant must specifically identify who the witness is, what his testimony would be, whether or not counsel was informed of his existence, and whether or not he was available to testify. *Morrow v. State*, 21 S.W.3d 819, 823 (Mo. banc 2000). [Petitioner] did not allege what Ingram would have testified to if he had been called to do so. Therefore it is impossible to say with any certainty Ingram's testimony would have rebutted Avedou's testimony and discredited him as a witness, leading to [Petitioner]'s acquittal. Id. at 823-24; *Leisure v. State*, 828 S.W.2d 872, 878 (Mo. banc 1992).

Based on the foregoing, we find [Petitioner] did not allege facts demonstrating ineffective assistance of counsel based on failure to investigate, and thus the motion court did not err in denying this claim without an evidentiary hearing.

Resp't Ex. I at 9.

"[C]ounsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and [] the burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quotations and citations omitted). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* "To establish prejudice from counsel's failure to investigate a potential witness, a Petitioner must show that the witness would have testified and

that their testimony would have probably changed the outcome of the trial." *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996) (quotation and citation omitted).

Petitioner has not provided any evidence that the letter supposedly written by Ingram exists. And he did not present the alleged contents of the letter to the Missouri Court of Appeals. Therefore, the appellate court was correct to conclude that Petitioner fell short of demonstrating that Ingram would have testified and that such testimony would probably have changed the outcome of the trial. The Missouri Court of Appeals's decision was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to relief on this ground.

### b. Ground 1-2

In ground 1-2, Petitioner argues that trial counsel was ineffective for disclosing privileged work product to the State. Petitioner claims that "[t]rial counsel provided the State and co-counsel with "Personal Correspondence" between "Attorney & Client" in the form of a "Handwritten Letter" that disclosed "Potential Trial Strategy" and faulty indictment information. The letter was dated 5-29-08 and given to the State 6-2-08, I was indicted 24 hrs. later." Pt'r Reply at 8.

Petitioner raised this claim in his amended motion for postconviction relief. Resp't Ex. F at 37. Petitioner stated that he "was denied effective assistance of counsel by [his] counsel's disclosure of confidential attorney-client work product to all counsel, namely a letter dated 5/29/2008 from [Petitioner] to trial counsel that was filed in court on 6/2/2008." *Id.* The motion court denied relief because the "claim [was] totally conclusory and speculative as [Petitioner] [did] not allege[] the substance of the letter and how he suffered prejudice at trial from its disclosure." *Id.* at 49. Petitioner did not raise this claim on appeal.

Respondent contends that this ground is procedurally barred. Respondent further argues that the motion court rightly denied the claim as conclusory.

The Court first agrees that this ground is procedurally barred because Petitioner abandoned it on appeal. The Court also agrees that the claim presented to the motion court was entirely conclusory and devoid of facts. And the claim presented to this Court is also wholly conclusory. As a result, Petitioner is not entitled to relief on this ground.

      c.     Ground 1-3

In ground 1-3, Petitioner argues that trial counsel was ineffective for constructively waiving his right to remain silent by telling the voir dire panel that he was going to testify and that he had prior convictions. Respondent contends that the state court applied the correct standard and that its decision was not unreasonable.

The Missouri Court of Appeals denied relief on this claim because Petitioner stated under oath that he had consulted with counsel on the pros and cons of testifying and that it was his own decision to testify at trial. Resp't Ex. I at 6-7.

The Court agrees that this claim is refuted by Petitioner's statements under oath. The appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to relief on this ground.

      d.     Ground 1-4

In ground 1-4, Petitioner argues that trial counsel was ineffective for failing to object to prosecutorial misconduct. In his Rule 29.15 appeal, Petitioner argued that the prosecutor committed misconduct by telling the jury in opening statement that they would hear witness Shante Jennings's testimony about what she witnessed at the crime scene even though the prosecution knew it had lost contact with her and would not be able to produce her at trial.

Resp't Ex. G at 39. The Missouri Court of Appeals denied relief on this claim because Petitioner should have brought it on direct appeal and because the prosecutor did not make the statements in bad faith. Resp't Ex. I at 11.

During opening statement, the prosecution told the jury that Jennings "'saw [Petitioner] entering the stairwell and following [Victim] up the stair steps and shoots him, describes how he got pulled back on the porch and Green and Vaughn went through his pockets and how Green got the marijuana, the money and gave it to Vaughn and they all ran off together.'" *Id.* at 10 (quoting Trial Tr.).

According to the appellate court,

> Prior to Detective Jackson testifying, the prosecutor told the court that although the court had issued a body attachment for Jennings and the State had investigators looking for her, they had failed to locate her, even though they had contact with her on Monday and Tuesday, procured a body attachment for her on Wednesday, and had been attempting to find her on Wednesday and Thursday nights. The prosecutor stated they would continue to try to locate her through the weekend. Jennings was never found to testify at trial.

*Id.*

Under Missouri law, "[a] freestanding claim of prosecutorial misconduct is generally not cognizable in a Rule 29.15 proceeding. If the alleged misconduct was apparent at trial, then it is an issue for direct appeal, not a Rule 29.15 proceeding." *Id.* at 11 (citations omitted).

The appellate court stated,

> In the instant case, the alleged misconduct was apparent at trial. Because [Petitioner] had knowledge of the alleged prosecutorial misconduct at the time of trial, he does not satisfy the requirements allowing his claim to be considered in a postconviction motion. As of the time the prosecutor made his opening statement, he still had contact with Jennings. As of that night and the next day, when he could not contact her, he brought that fact to the attention of the court. The court stated it would allow her testimony if she was available by the close of the State's case. Thus, when the State rested and had not produced her, [Petitioner] knew for certain of any alleged misconduct, making this allegation an issue for direct appeal.

> In any event, [Petitioner]'s claim of prosecutorial misconduct is refuted by the record in that as of the time the prosecutor made his opening statement, he still had contact with Jennings, and thus he could not have spoken with the purported knowledge that he would lose contact with her in the future.

*Id.*

Prosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render Petitioner's conviction a denial of due process. *Roberts v. Bowersox*, 137 F.3d 1062, 1066 (8th Cir. 1998). "A petitioner 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different.'" *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (quoting *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir.1995)).

Petitioner does not give any indication as to how the Missouri Court of Appeals applied the law unreasonably, and he does not argue that the outcome of the case would have been different absent the prosecutor's opening remarks about Jennings's testimony. The record shows that the prosecutor believed that Jennings would be available to testify at trial. Neither the prosecutor nor defense counsel knew that Jennings would disappear, and counsel was not ineffective for failing to anticipate that. Moreover, given the other evidence of his guilt, such as Avedou's and Robinson's testimony, Petitioner cannot show that he would have been acquitted if the prosecutor had refrained from mentioning Jennings. As a result, Petitioner is not entitled to relief on this ground.

e.      Ground 1-5

In ground 1-5, Petitioner argues that trial counsel was ineffective for failing to object to uncharged conduct. Petitioner does not say what or whose testimony counsel should have objected to. Nor does he specify the uncharged conduct that was supposedly disclosed.

Respondent contends that this ground is procedurally barred. Respondent is correct. Petitioner did not bring any version of this claim in his Rule 29.15 appeal, and he has not shown cause or prejudice for the default. Therefore, Petitioner is not entitled to relief on this ground.

Moreover, Petitioner has failed to state any facts that would entitle him to relief. This claim is entirely conclusory. Petitioner has failed to show either that counsel was ineffective or that the outcome of the trial would have been different if an objection would have been made. As a result, this claim fails on the merits as well.

### f. Ground 1-6

In ground 1-6, Petitioner argues that trial counsel was ineffective for failing to properly subpoena Shante Jennings. Petitioner claims that Jennings's deposition testimony about the incident was contrary to Avedou's and, therefore, she would have been helpful to the defense.

Respondent contends that this ground is procedurally barred. The Court agrees. Petitioner did not bring any version of this claim in his Rule 29.15 appeal, and he has not shown cause or prejudice for the default. Therefore, Petitioner is not entitled to relief on this ground.

Additionally, this claim is wholly conclusory. Petitioner has not submitted Jennings's deposition transcript. Nor has he stated how her testimony contradicted Avedou's. He has failed to show that counsel's performance was ineffective or that the outcome of the trial would have been different had Jennings testified. As a result, this claim also fails on the merits.

### g. Ground 2

In ground 2, Petitioner argues that the prosecutor committed misconduct by failing to produce Shante Jennings at trial and by introducing statements of uncharged conduct through a witness. Respondent contends that this ground is procedurally barred and meritless.

This claim is both procedurally barred and meritless for the reasons set forth above in the discussion of grounds 1-4 and 1-5. The record shows that the prosecutor attempted to produce Jennings at trial but that she could not be located. And Petitioner has failed to allege what statements of uncharged conduct were elicited. Furthermore, the prosecutor does not commit misconduct by eliciting testimony from a witness; it is the responsibility of defense counsel to object to the testimony and of the jury to decide the truthfulness of it. As a result, Petitioner is not entitled to relief on this ground.

h.      Ground 3

In ground 3, Petitioner argues that the trial court erred in not severing his case from his co-defendants. Respondent contends that this is a matter of state law and that the Missouri Court of Appeals applied the law correctly.

The Missouri Court of Appeals denied relief on this ground, stating:

When two or more defendants are charged in the same instrument, the court shall order the defendants to be tried together. The court shall order severance of the defendants for trial if, upon written motion of the defendant, the court finds the probability of prejudice in a joint trial or a separate trial is necessary for a fair determination of guilt or innocence of any defendant.

The court has a duty to sever the trials of co-defendants when they have irreconcilable defenses, however, this is limited to cases where the conflict alone demonstrates that both defendants are guilty. The trial court has discretion to determine whether to sever a joint trial, and we will not disturb its ruling on appeal unless the denial constituted an abuse of discretion resulting in clear prejudice to the defendant. Severance is not required when prejudice to the defendant can be prevented with a less drastic course of action, such as proper jury instructions.

[Petitioner] was charged jointly in the same information with Green and Vaughn and, therefore, a joint trial was required unless [Petitioner] affirmatively established that the joint trial prejudiced his right to a fair trial. [Petitioner] testified that he was present on the day of the shooting but that it was [Avedou] who shot Mack during a dispute over a drug transaction. Green's defense at trial was that he was not present when the shooting occurred, which was consistent with [Petitioner]'s testimony. [Petitioner]'s testimony was also consistent with Vaughn's defense that Vaughn was inside the first-floor apartment during the

shooting. Although [Petitioner]'s version of events did not perfectly match that of his co-defendants, they were largely consistent on the material issues. Neither Green nor Vaughn presented evidence implicating [Petitioner], and both argued that they were not present and did not participate in the robbery. [Petitioner]'s co-defendants did not present defenses antagonistic to [Petitioner]'s defense.

Resp't Ex. E at 9-10.

"A habeas petitioner is not entitled to relief on the grounds that he was entitled to a severance unless he can show that a joint trial was fundamentally unfair. *Hood v. Helling*, 141 F.3d 892, 896 (8th Cir. 1998). "Fundamental unfairness is shown where mutually antagonistic defenses compromised a specific trial right or prevented the jury from making a reliable determination of guilt or innocence. Mutually antagonistic defenses are those which force the jury to disbelieve the core of one defense in order to believe the core of the other." *Id.* (citation omitted).

Green testified repeatedly that he left before the shooting occurred. Resp't Ex. A at 1115-16,1139, 1144. He never testified that Petitioner was the shooter. Vaughn's only witness, Latonya Holmes,[3] testified that she did not see the shooting. *Id.* at 1186, 1204. And she testified that she and Vaughn were in the back room of the first apartment when the shooting occurred. *Id.* at 1203-04. Petitioner testified that he was outside of the apartment when he heard gunshots coming from the second story apartment. *Id.* at 1006. He further testified that he did not see the shooting and did not know who the shooter was. *Id.* at1012-13. He never stated that Green or Vaughn were present when the shooting occurred or that they rifled through Mack's pockets after the shooting. *Id.* at 1058. He testified that he told them both to leave the apartment before the shooting happened. *Id.* at 1037, 1039. And he testified that Green left when he told Green to

---

[3] Holmes's maiden name was Hyshaw, and she was referred to as Hyshaw during the trial.

leave.  *Id.* at 1046, 1050-51.  He further testified that Vaughn was going back inside the downstairs apartment before the shooting occurred.  *Id.* at 1051.

The Missouri Court of Appeals applied the correct standard, and its application of the law to the record was not unreasonable.  None of the defendants implicated each other as the shooter. They all testified that they were not present when the shooting happened, and they testified that they did not know who the shooter was.  Their defenses were not mutually antagonistic.  As a result, Petitioner is not entitled to relief on this ground.

      i.    Ground Four

In ground four, Petitioner argues that the trial court erred in allowing hearsay evidence. Petitioner claims that Marnice Lewis and Cyntoria Lewis's testimony that Avedou told them Petitioner committed the shooting was inadmissible hearsay and that it prejudiced his defense. He says that their testimony only served to bolster Avedou's testimony and that it was elicited because Avedou was not a reliable witness in that he had prior convictions.  Respondent contends that state evidentiary rulings are matters of state law and that the state court's application of the law was reasonable.

In denying relief on this ground, the Missouri Court of Appeals stated:

Determination of the relevancy and admissibility of evidence is a matter clearly within the discretion of the trial court and will not be reversed in the absence of an abuse of that discretion.  The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable that it indicates a lack of careful consideration.  We will reverse only when the error was so prejudicial that it deprived the defendant of a fair trial, meaning that there is a reasonable probability that the result of the trial would have been different had the evidence not been admitted.

At trial, the State introduced, over [Petitioner]'s objections, the testimony of Marnesa and Cyntoria Lewis.  Marnesa testified that on February 25, 2008, [Avedou] called her and told her that [Petitioner] had just shot Mack. After receiving this call, Marnesa went to the apartment with her sister Cyntoria where [Avedou] again told her that it was [Petitioner] who killed Mack. Later that evening, when Marnesa took [Avedou] to a hotel to stay for the night, [Avedou]

told her that after [Petitioner] shot Mack, Green and Vaughn went through Mack's pockets. Cyntoria Lewis testified that on February 25, 2008, she overheard [Avedou] tell Marnesa that [Petitioner] was the one who had shot Mack.

A witness's prior consistent statements are admissible for the purpose of rehabilitating the credibility of a witness which was attacked by an express or implied claim of recent fabrication of trial testimony. Any evidence which permits an inference that the witness's testimony was recently fabricated opens the door for use of the witness's statements made prior to the suggested fabrication. A prior consistent statement is also admissible to rehabilitate a witness impeached by his prior inconsistent statements. The admission of prior consistent statements is limited to that necessary to counter the subject on which the witness was impeached. Improper bolstering occurs when the witness's out-of-court statements are offered only to be duplicative or corroborative of the witness's trial testimony.

Here, Marnesa and Cyntoria's testimony of [Avedou]'s prior statements consistent with his trial testimony was admissible to rehabilitate [Avedou]'s credibility and to rebut [Petitioner]'s claim that [Avedou] had recently fabricated his trial testimony. At trial, [Petitioner] alleged that it was [Avedou] who actually killed Mack. [Petitioner] also attacked [Avedou]'s credibility during cross examination by challenging [Avedou]'s ability to observe the scene and [Avedou]'s statements to the 911 operator and law enforcement that he did not know who shot the victim. The State was entitled to rehabilitate [Avedou] by introducing evidence of his prior consistent statements to Marnesa and Cyntoria that [Petitioner] was the shooter. The women's testimony was limited and rebutted the implication that [Avedou] had recently fabricated his trial testimony. The testimony of Marnesa and Cyntoria was not wholly duplicative and did not constitute improper bolstering.

Resp't Ex. E at 11-13 (quotations and citations omitted).

"A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996).

Under Rule 801(d)(1)(B) of the Federal Rules of Evidence, it is not hearsay for a witness to testify about the defendant's prior consistent statements if the testimony is offered "to rebut an

express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying . . ."

The Missouri standard is equivalent to Rule 801. The Missouri Court of Appeals reasonably applied the law to the facts of the case. Petitioner attempted to attack Avedou's testimony by his first statement to the police that he did not know who the shooter was. The Lewises' testimony was introduced to rehabilitate Avedou by showing that he made several consistent statements to them that Petitioner was the shooter. Petitioner has not shown that he was deprived of due process. As a result, he is not entitled to relief on this ground.

       j.      Ground Five

In ground five, Petitioner argues that "newly discovered evidence," which was contained in his trial legal file, demonstrates his actual innocence. Respondent contends that information in the legal file is not "new evidence" and cannot support a claim of actual innocence. Respondent is correct.

"The test for newly discovered evidence is whether the evidence could have been discovered earlier in the exercise of due diligence." *Meadows v. Delo*, 99 F.3d 280, 282 (8th Cir. 1996) (quotation and citation omitted). Here, Petitioner admits that the evidence was contained in his legal file. He does not show that the evidence could not have been discovered through due diligence. As a result, he does not have any newly discovered evidence to support an actual innocence claim, and he is not entitled to relief on this ground.

       k.      Ground Six

In ground six, Petitioner argues that postconviction counsel was ineffective for failing to argue that direct appeal counsel was ineffective for failing to raise his prosecutorial misconduct

claim. Respondent contends that Petitioner is attempting to bring an independent claim of ineffective assistance of postconviction counsel, which is not permissible.

Under § 2254(i), "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Therefore, to the extent that Petitioner is arguing that he is entitled to relief based on postconviction counsel's ineffectiveness, this claim must be denied.

The Supreme Court held in *Martinez v. Ryan* that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. 1309, 1320 (2012). The default may be excused only if any of the eliminated grounds of ineffective assistance of trial counsel was "substantial," "which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318.

The Court has already addressed the merits of Petitioner's prosecutorial conduct claim and has found it to be without merit. As a result, the default may not be excused, and Petitioner is not entitled to relief on this ground.

*l.* Ground Seven

In ground seven, Petitioner argues that the evidence was insufficient to support the conviction for first-degree murder because the elements of deliberation or premeditation were not proved, and he claims there was insufficient evidence to support the conviction for first-degree robbery because it was never proved that he took any property from the victim. Respondent contends that the Missouri Court of Appeals's decision on this issue was reasonable under federal law.

In reviewing a claim of insufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In applying this standard, the scope of review is extremely limited. The Court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and the Court must defer to that resolution. *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003).

In reviewing these claims, the Missouri Court of Appeals applied the correct standard. Resp't Ex. E at 7. With regard to the conviction for first-degree murder, the court found the evidence sufficient to support the conviction. Under Missouri law,

> A person commits first-degree murder when he "knowingly causes the death of another person after deliberation on the matter." Section 565.020.1. Deliberation is defined as "cool reflection for any length of time no matter how brief[.]" Section 565.002(3). . . A lack of concern for and a failure to attempt to aid the victim supports an inference of deliberation.

*Id.* at 7-8 (footnote omitted).

The court then recited the facts showing that Petitioner deliberated before killing Mack:

> After Mack answered the apartment door, he started to return to his apartment when [Petitioner] called for him to come back down the stairs. [Petitioner] then accused Mack of making an offending remark to [Petitioner]'s girlfriend. When Mack denied the allegation and attempted to return to his apartment, [Petitioner] shot Mack in the back. [Petitioner] then pulled Mack outside of the building and onto the porch, so that Green and Vaughn could rob Mack. [Petitioner] fled the scene without providing Mack any aid or seeking any assistance. [Petitioner] subsequently threatened [Avedou] for identifying [Petitioner] as the shooter and sought to cover up his involvement in the shooting by initially denying to law enforcement that he was present and later blaming one of his codefendants. The injury inflicted upon Mack coupled with [Petitioner]'s actions before and after the shooting, provided the jury with sufficient evidence of deliberation.

> We find that the State produced sufficient evidence from which a reasonable trier of fact could find [Petitioner] guilty beyond a reasonable doubt

*Id.* at 8.

The Court agrees. There was sufficient evidence for any rational juror to conclude that Petitioner deliberated before shooting Mack. Consequently, Petitioner is not entitled to relief on this issue.

Under Missouri law, "[a] person commits first-degree robbery when he forcibly steals property, and, in the course thereof he, or another participant of the crime, causes serious physical injury to any person." *Id.* at 9. A defendant need not take the property himself, a robbery "conviction can [] stand if he was acting in concert with the others. . . . It [is] not necessary for the State to prove defendant personally committed all the acts which constitute the essential elements [of robbery]" *Missouri v. Colthorp*, 437 S.W.2d 75, 77 (Mo. 1969).

Regarding the conviction for first-degree robbery, the state court recounted the facts as follows:

> [Avedou] testified that after he heard the gunshot, he ran to the stairs and saw [Petitioner] pulling Mack outside of the building. Once on the porch, [Avedou] saw Green and Vaughn going through Mack's pants pockets. Although [Avedou] testified that he did not actually see Green or Vaughn take anything from Mack's pockets, he stated that Mack generally carried approximately $50 on his person. [Petitioner] himself testified that Mack should have been carrying $40 because Mack had sold drugs to several customers just before he was shot. The evidence indicated that when police arrived, Mack's right pants pocket was turned inside out and that no money was found on Mack's person. This evidence was sufficient to support a reasonable inference that Mack had money in his pockets and that this money was taken by Green and Vaughn after [Petitioner] shot Mack.

*Id.*

Again, this Court agrees. Resolving all inferences in favor of the prosecution, a rational juror could have found that Petitioner acted in concert with Green and Vaughn in the taking of Mack's property. As a result, Petitioner is not entitled to relief on this ground.

**Conclusion**

For these reasons, Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that the petition for writ of habeas corpus is **DENIED**, and this action is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability.

A Judgment will be filed separately.

Dated this 29th day of March, 2017.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE